Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in The U.S. DISTRICT COURT at Seattle, Washington.

April 15, 2010
BRUCE RIFKIN, Clerk
By _____ Deputy

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR10-100 JCC |
| Plaintiff, | |
| v. | INDICTMENT |
| LORENZO V. MOLINA JR. | |
| Defendants. | |

### COUNT 1
### (Mail Fraud)

**A.  Introduction**

1.  Beginning in or about October 2006, and continuing until in or about August 2009, at Sammamish and elsewhere, in King County, within the Western District of Washington, LORENZO V. MOLINA JR. devised and intended to devise a scheme and artifice to defraud, and obtain money and property from various individuals by means of materially false and fraudulent pretenses, representations, promises, and the concealment of material facts as set forth below.

2.  LORENZO V. MOLINA JR. is a Washington resident, and was formerly employed by The Boeing Company for over thirteen years until approximately 2002 as an aircraft and engine mechanic.  LORENZO V. MOLINA JR.'s responsibilities at The Boeing Company included fabrication, installation, repair, and modification of mechanical and structural aircraft parts.

3. The essence of LORENZO V. MOLINA JR.'s scheme and artifice to defraud was to create a company named Commercial Aviation Services, LLC ("CAS"), and falsely represent that CAS was in the business of purchasing used aircraft parts, having those parts refurbished by third parties and re-certified by the FAA, and then selling the parts to various airlines for a profit. It further was part of the scheme and artifice to defraud to solicit individuals to loan money to CAS or fund CAS's purchases based on those representations, in exchange for a return of the principal and payment of a portion of the supposed "profits" made from CAS's purported resale of the refurbished parts.

4. In fact, CAS never purchased used aircraft parts, never arranged for those parts to be refurbished by any third parties, and never resold such refurbished parts to airlines. LORENZO V. MOLINA JR. concealed his fraud by encouraging individuals to "roll over" their supposed "profits" into another CAS venture, so that LORENZO V. MOLINA JR. did not have to pay individuals. Although LORENZO V. MOLINA JR. made periodic payments of some purported CAS "profits" and principal to investors, these payments were derived from investor funds, including the funds of later investors. Thus, LORENZO V. MOLINA JR. used the mail and interstate wires to operate a fraud of the type commonly referred to as a Ponzi scheme.

5. Based on LORENZO V. MOLINA JR.'s false representations, between October 2006 and August 2009, individuals provided LORENZO V. MOLINA JR. and CAS approximately $3,647,931.33. Of this amount, LORENZO V. MOLINA JR. repaid individuals approximately $1,703,737.04 as return of principal and supposed "profit" made from selling the supposedly-refurbished aircraft parts, when, in fact, the funds came from other investors. The remaining approximately $1,944,194.29 was spent, among other things, on a Steinway & Sons grand piano, tuition for private schools for LORENZO V. MOLINA JR.'s children, horses, and real estate for himself and his extended family, including homes in Issaquah, Maple Valley, Fall City, and Ft. Mohave, Arizona.

**B.   The Scheme and Artifice to Defraud**

6.   Sometime in or around October 2006, LORENZO V. MOLINA JR. represented to J.H., his neighbor, that he had been an FAA Certified aircraft mechanic with The Boeing Company, that he had specialized knowledge regarding the aircraft industry, and that he had started a business called CAS. LORENZO V. MOLINA JR. told J.H. that CAS was in the business of purchasing used aircraft parts, having those parts refurbished by third parties for FAA certification, and then selling the refurbished parts to airlines for a profit. LORENZO V. MOLINA JR. solicited J.H. to loan CAS $61,000.00, supposedly to allow CAS to purchase emergency slides to be refurbished, re-certified, and resold to United Airlines at a profit. LORENZO V. MOLINA JR. also represented to J.H. that, in return for funding CAS's purchase of the emergency slides, LORENZO V. MOLINA JR. would return J.H.'s principal and a share of the profit resulting from sale of the emergency slides. Based on these representations, J.H. provided CAS with $61,000.00 on or about October 20, 2006.

7.   On or about the same day, October 20, 2006, LORENZO V. MOLINA JR. registered Commercial Aviation Services, LLC ("CAS") as a limited liability company under the laws of the State of Washington (UBI Number 602661724) by filing paperwork online, via the internet, with the Washington Secretary of State, and thus causing the Washington Secretary of State to return by United States Mail to LORENZO V. MOLINA JR. a Certificate of Formation for CAS and other relevant registration paperwork.

8.   On November 2, 2006, LORENZO V. MOLINA JR. solicited J.H. to provide CAS with an additional $107,000.00, supposedly to allow CAS to purchase three more emergency slides, to be refurbished, and resold for a profit. J.H. provided LORENZO V. MOLINA JR. with a check in the amount of $107,000.00 to fund the loan to CAS, and wrote LORENZO V. MOLINA JR. an e-mail memorializing the terms under which J.H. was giving the funds to CAS. LORENZO V. MOLINA JR. represented to J.H. that in return for funding this transaction, LORENZO V. MOLINA JR. would return

1  J.H.'s principal investment and pay him a share of the profits resulting from the sale of
2  the emergency slides. Moreover, LORENZO V. MOLINA JR. confirmed by response e-
3  mail the terms that J.H. had summarized and provided J.H. with descriptions, serial
4  numbers and other identifying information, and prices for three emergency slides that
5  LORENZO V. MOLINA JR. agreed CAS would purchase with J.H.'s $107,000.00,
6  which CAS never did.
7       9.   On or about November 15, 2006, LORENZO V. MOLINA JR. falsely
8  represented to J.H. that the slides, which were the subject of J.H.'s first $61,000.00 loan,
9  were successfully refurbished and resold to United Airlines for a profit, and that J.H.'s
10 return on his $61,000.00 investment was approximately $9,896.21. Based on his
11 continued representations about the lucrative nature of his CAS business, LORENZO V.
12 MOLINA JR. encouraged J.H. to "roll over" his initial investment and profit into further
13 CAS ventures.
14      10.  Between October 2006 and August 2009, LORENZO V. MOLINA JR., on
15 behalf of CAS, solicited J.H. and additional individuals and business entities, including
16 JJHI, J.D., C.B., NJS, J.S., and S.H. (collectively the "Investors"), to finance CAS's
17 purchase of used aircraft parts, the refurbishing of such parts by third parties, and resale
18 to airlines for a profit. In furtherance of the scheme and artifice to defraud, LORENZO
19 V. MOLINA JR. made false representations to the Investors in-person and via e-mail that
20 previous aircraft part sales had been successful and generated a profit, and encouraged the
21 Investors to "roll over" that profit into another transaction.
22      11.  In furtherance of the scheme and artifice to defraud, LORENZO V.
23 MOLINA JR. generated false documents to make certain of the Investors believe that
24 CAS had purchased used aircraft parts, sent those parts to third parties to be refurbished,
25 and received payment for the resale of those parts. For example, LORENZO V.
26 MOLINA JR. provided J.H. with printed "screen shots" of supposed FedEx shipping
27 confirmations that purportedly showed the shipment of aircraft parts. On one occasion,
28 LORENZO V. MOLINA JR. provided J.H. with a "screen shot" of a false FedEx

shipping confirmation for an outbound shipment from "GT Aviation" in the United Kingdom to "Lufthansa Technic" in Frankfurt, Germany. The billing details purported to show that on May 25, 2007, the package was sent FedEx Ground, which is not a service option for shipping from the United Kingdom to Germany.

12. In another instance, LORENZO V. MOLINA JR. provided J.H. with a "screen shot" of a supposed April 20, 2007, online wire transfer from CAS's Cascade Bank account (****0685), for $272,200.00 to Skyharbor & Rush Inc, Overhaul. In fact, this wire transfer never occurred. LORENZO V. MOLINA JR. falsely represented to J.H. that this transaction was for the purchase of 747 slides.

13. In furtherance of the scheme and artifice to defraud, LORENZO V. MOLINA JR. made periodic payments to certain of the Investors, falsely representing that the payments were "profits" generated from aircraft part sales or funds Investors had "rolled over" from earlier transactions at LORENZO V. MOLINA JR.'s encouragement. LORENZO V. MOLINA JR. routinely derived these payments from the funds of other Investors. For example, on March 10, 2008, CAS's Cascade Bank account (****0685) had a balance of $284.50. On March 11, 2008, LORENZO V. MOLINA JR. deposited a $50,000.00 check from J.S., and used those funds to purchase a Cascade Bank Cashier's Check in the amount of $47,910.00 payable to J.H.

14. Later in March 2008, LORENZO V. MOLINA JR. ceased making payments to most Investors. LORENZO V. MOLINA JR. initially told the Investors that Cascade Bank had closed CAS's account because the U.S. Treasury Department's Office of Foreign Asset Control ("OFAC") wanted to investigate financial transactions involving the account. LORENZO V. MOLINA JR. claimed that CAS's sale of a valve to Turkmenistan Airlines in August 2007 involved a bank that was on the OFAC's terrorism watch list. In fact, as LORENZO V. MOLINA JR. knew, OFAC had not – and has not – blocked any banking transaction involving CAS or LORENZO V. MOLINA JR.

15. LORENZO V. MOLINA JR. subsequently moved CAS's account to Bank of America. LORENZO V. MOLINA JR. then claimed that Bank of America, just like

1  Cascade Bank, was refusing to give him access to CAS's funds because OFAC had
2  placed a hold on this account.
3     16.    When Investors pressed LORENZO V. MOLINA JR. to resolve CAS's
4  OFAC issues, LORENZO V. MOLINA JR. manufactured false documents to substantiate
5  his false claims that OFAC was holding CAS's money, and that the money could thus not
6  be returned to the Investors. For example, J.H. had a personal bank account, line of
7  credit, and a long standing relationship with Bank of Bellevue. J.H. spoke with Bank of
8  Bellevue's Senior Vice President of Commercial Lending about the supposed difficulty
9  that LORENZO V. MOLINA JR. was having with CAS funds being held by OFAC, and
10 J.H. inquired about the possibility of CAS opening a business account at Bank of
11 Bellevue because of CAS's purported problems with Bank of America. The Senior Vice
12 President of Commercial Lending informed J.H. that Bank of Bellevue would require a
13 letter from OFAC stating that all issues had been resolved before CAS could open an
14 account. In response, LORENZO V. MOLINA JR. provided Bank of Bellevue with a
15 forged letter dated August 16, 2008, purporting to be from the U.S. Department of
16 Treasury. The letter, which bears the seal of the U.S. Department of Treasury, states that
17 the U.S. Department of Treasury "has concluded its investigation into use of sanctioned
18 international funds that were received by your company and/or individual account/s
19 through the Office of Foreign Asset Control." LORENZO V. MOLINA JR. provided the
20 letter to Bank of Bellevue to support his claim that OFAC had placed and released its
21 hold on CAS's funds. LORENZO V. MOLINA JR. provided an identically-worded
22 letter, dated December 4, 2008, to G.J. (a principal at NJS) to support his claim that
23 OFAC was holding CAS's funds. This letter also bears the seal of the U.S. Department
24 of Treasury.
25     17.    LORENZO V. MOLINA JR. also began manufacturing false documents to
26 support his claim to Investors that they would be getting their money back soon. For
27 example, LORENZO V. MOLINA JR. provided J.H. with a fabricated letter purportedly
28 from BECU Customer Service representative S.S. As LORENZO V. MOLINA JR. well

knew, S.S. was a BECU employee, but S.S. did not write the letter. The letter, addressed to LORENZO V. MOLINA JR. states: "We recently received an incoming wire on 12/23/08, in the amount of $3,825,000.00. Due to the amount of the wire and it's [sic] origin, we will make these funds available after Jan 5, 2009."

18. LORENZO V. MOLINA JR. also provided G.J. with another letter purporting to be from the U.S. Department of Treasury, dated February 4, 2009, bearing the seal of the U.S. Department of Treasury. The letter, which LORENZO V. MOLINA JR. provided to G.J. to substantiate his claim that OFAC was releasing approximately $2.5 million of CAS's funds, falsely states:

> This is to inform you of an incoming Electronic Transfer Notification. Please verify the information above for correctness. At this time we have completed our review of the above company and are satisfied that release of funds will be conducted, **within 72 hours of the date of this letter**. No compliance regulations were violated and [sic] case is considered closed. The following amounts will be released[:]
>
> $1,635,230.20
> $535,650.46
> $240,630.00
> $81,251.30

19. LORENZO V. MOLINA JR. also provided J.H.'s wife, D.H., with copies of six different counterfeit checks payable to CAS, totaling $2,846,492.31, and purporting to be drawn on a Bank of America account (****9600), to substantiate his claim that CAS had funds with which LORENZO V. MOLINA JR. would return J.H.'s investment and supposed profits from CAS ventures.

20. In furtherance of the scheme and artifice to defraud, LORENZO V. MOLINA JR. contacted the U.S. Department of Commerce and Immigrations and Custom Enforcement officials to make it appear to his Investors that he was working on dissolving OFAC's supposed hold on CAS's assets. For example, LORENZO V. MOLINA JR. contacted an Immigration and Customs Enforcement Special Agent about OFAC's fictitious block on CAS's transfer of funds and aircraft parts, even though LORENZO V. MOLINA JR. knew full well that CAS had never made any such transfer

of funds or aircraft parts. Specifically, on January 9, 2009, LORENZO V. MOLINA JR. falsely wrote in an e-mail that, "I have funds wire [sic] from overseas for aircraft parts purchased, and they have been blocked and returned or there are funds being held. I have tried approximately twelve times to contact OFAC and the Treasury[.]" The Special Agent responded via e-mail, confirming what LORENZO V. MOLINA JR. already knew: that OFAC "d[id] not have a record of a blocked payment intended for you or your company [CAS]."

21. Similarly, on or about February 18, 2009, LORENZO V. MOLINA JR. falsely represented to an Office of Export Enforcement Special Agent that a wire transfer of funds to CAS had been blocked by Bank of America because the sender was on the Specifically Designated Nationals List, and thus sanctioned by OFAC.

22. During the course of soliciting funds for CAS, LORENZO V. MOLINA JR. made numerous materially false representations by e-mail and in person, including

    a. falsely representing that CAS purchased used aircraft parts, had those parts refurbished by third-parties for FAA re-certification, and resold those parts to airlines;

    b. falsely representing that CAS was generating a profit from its business of purchasing, refurbishing, and reselling used aircraft parts, and had receivables as a result of its business;

    c. falsely representing that funds being solicited would be used to support CAS's business of purchasing, refurbishing, and reselling used aircraft parts;

    d. falsely representing that "profits" paid to Investors were derived from CAS's business of purchasing, refurbishing, and reselling used aircraft parts; and

    e. falsely representing that various federal agencies and banks had placed a "hold" on CAS assets and/or refused to disburse such assets to LORENZO V. MOLINA JR.

///

///

B. **Execution of the Scheme and Artifice to Defraud**

23. On or about October 20, 2006, in Sammamish and elsewhere, in King County, within the Western District of Washington, LORENZO V. MOLINA, JR., having devised the above-described scheme and artifice, for the purpose of executing and in order to effect the scheme and artifice to defraud, did knowingly cause to be delivered by mail by the United States Postal Service, according to the directions thereon, the following mail matter, the delivery of which constitutes a distinct Count of this Indictment.

| Count | Date | Sender | Addressee | Item Mailed |
|---|---|---|---|---|
| 1 | 10/20/06 | Washington Secretary of State, Olympia, Washington | LORENZO V. MOLINA JR., Sammamish, Washington | Certificate of Formation to Commercial Aviation Services, LLC |

All in violation of Title 18, United States Code, Section 1341.

### COUNT 2-7
### (Wire Fraud)

24. Beginning in or about October 2006, and continuing until in or about August 2009, at Sammamish and elsewhere, in King County, within the Western District of Washington, LORENZO V. MOLINA JR. devised and intended to devise, a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and the concealment of material facts.

25. The Grand Jury re-alleges and reincorporates, as if fully set forth herein, Paragraphs 1 through 22 of this Indictment as setting forth the scheme and artifice to defraud and obtain money and property from the Investors in CAS. It was a part of the scheme and artifice that LORENZO V. MOLINA JR. knowingly made and caused to be made the material misrepresentations, and concealed the material facts, set forth in those Paragraphs. It was a further part of the scheme and artifice that LORENZO V. MOLINA JR. intended by his actions to defraud the Investors.

26. On or about the dates set forth below, at Sammamish and elsewhere, within the Western District of Washington, LORENZO V. MOLINA JR. for the purpose of executing this scheme and artifice, did knowingly transmit and cause to be transmitted by wire communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds, each transmission of which constitutes a separate count of this Indictment.

| Count | Date | Sender | Recipient | Wire Transmission |
|---|---|---|---|---|
| 2 | 11/04/06 | LORENZO V. MOLINA JR. | J.H. | E-mail "Re: 3 slides purchased today" identifying serial number and prices of three supposed aircraft emergency slides, which e-mail traveled from Washington to Kansas and back to Washington |
| 3 | 02/10/07 | LORENZO V. MOLINA JR. | J.H. | E-mail "Re: update" identifying aircraft emergency slides that supposedly were to be purchased, shipped, and resold, which e-mail traveled from Washington to Kansas and back to Washington |
| 4 | 03/14/08 | LORENZO V. MOLINA JR. | J.S. | E-mail "FW: RE: update" estimating costs associated with supposed purchase and shipment of "stab motor assy" and ADIRU box and projected profit to J.S., which e-mail traveled from Washington to Kansas and back to Washington |
| 5 | 07/21/08 | LORENZO V. MOLINA JR. | J.S. | E-mail "RE: Meet Linda & Lorenzo" attaching description of CAS's supposed accounts receivable totaling $1,888,275.19, which e-mail traveled from Washington to Kansas and back to Washington |
| 6 | 10/22/08 | Shoreline Bank | Bank of America | $575,000 wire transfer to loan CAS funds for supposed purchase of used aircraft parts, which wire traveled from Washington to New Jersey and back to Washington |
| 7 | 08/19/08 | LORENZO V. MOLINA JR. | J.D. | E-mail "invoice," attaching Invoice for supposed purchase by CAS of "rotary actuator[s]" for 757 from Merlin Associates, which e-mail traveled from Washington to Kansas and back to Washington |

All in violation of Title 18, United States Code, Section 1343.

## COUNT 8
### (False Statement)

27. The Grand Jury re-alleges and reincorporates, as if fully set forth herein, Paragraphs 1 through 22 of this Indictment.

28. On or about February 18, 2009, at Sammamish, in King County, within the Western District of Washington, LORENZO V. MOLINA JR., in a matter within the jurisdiction of the U.S. Department of Commerce, Bureau of Industry and Security, an agency of the United States, knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation, in that he represented to the Office of Export Control Special Agent that an incoming wire transfer designated for Commercial Aviation Services, LLC ("CAS") had been blocked by Bank of America because the sender was listed on the Specially Designated Nationals List, and thus sanctioned by the Office of Foreign Asset Control ("OFAC"). As LORENZO V. MOLINA JR. well knew, this statement was materially false, fictitious, and fraudulent in that neither Bank of America nor OFAC had blocked any incoming wire transfer designated for CAS.

All in violation of Title 18, United States Code, Section 1001.

## COUNT 9
### (Wrongful/Fraudulent Use of Government Seal)

29. The Grand Jury re-alleges and reincorporates, as if fully set forth herein, Paragraphs 1 through 22 of this Indictment.

30. On a date unknown, but after October 20, 2006, and before December 31, 2008, at Sammamish and elsewhere, in King County, within the Western District of Washington, LORENZO V. MOLINA JR. did fraudulently and wrongfully affix the seal of United States Department of Treasury to a document and paper, namely a letter to "Lorenzo V Molina C/O Commercial Aviation Services" dated August 16, 2008, and with knowledge of the fraudulent character of the seal, and with wrongful and fraudulent intent, used and transferred to another the document and paper to which and upon which said seal had been so fraudulently affixed and impressed.

All in violation of Title 18, United States Code, Section 1017.

## COUNT 10
### (Wrongful/Fraudulent Use of Government Seal)

31. The Grand Jury re-alleges and reincorporates, as if fully set forth herein, Paragraphs 1 through 22 of this Indictment.

32. On a date unknown, but after October 20, 2006, and before February 27, 2009, at Sammamish and elsewhere, within the Western District of Washington, LORENZO V. MOLINA JR. did fraudulently and wrongfully affix the seal of United States Department of Treasury to a document and paper, namely a letter to "Commercial Aviation Services LLC, Case Number: C515926" dated February 4, 2009, and with knowledge of the fraudulent character of the seal, and with wrongful and fraudulent intent, used and transferred to another the document and paper to which and upon which said seal had been so fraudulently affixed and impressed.

All in violation of Title 18, United States Code, Section 1017.

## FORFEITURE

1. With respect to the Mail Fraud and Wire Fraud alleged in Counts 1-7 of this Indictment, the defendant named herein, upon conviction shall forfeit to the United States of America all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the Mail Fraud and Wire Fraud, including but not limited to a sum of money equal to approximately $1,944,194.29 in United States currency, representing the amount of proceeds obtained as a result of the Mail Fraud and Wire Fraud offenses, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. If any of the property described above subject to forfeiture as a result of any act or omission of the defendants:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third person;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

|  |  |  |
|---|---|---|
| 1 | e. | Has been commingled with other property which cannot be |
| 2 |  | subdivided without difficulty; |

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said Defendant up to the value of the forfeitable property.

All in accordance with Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

DATED: April 15 2010

*Signature of Foreperson redacted pursuant to the policy of the Judicial Conference of the United States.*

_____
FOREPERSON

_____
JENNY A. DURKAN
United States Attorney

_____
CARL BLACKSTONE
Assistant United States Attorney

_____
ANDREW FRIEDMAN
Assistant United States Attorney

_____
ARAVIND SWAMINATHAN
Assistant United States Attorney